# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL A. SMITH,** | : | No. 3:08cv1974 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| **BARNES & NOBLE BOOKSELLERS;** | : | |
| **BARNES & NOBLE BOOKSELLERS, INC.; and** | : | |
| **BARNES & NOBLE, INC.,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is the motion for summary judgment filed by Defendants Barnes & Noble Booksellers, Barnes & Noble Booksellers, Inc. and Barnes & Noble, Inc. (hereinafter "defendants"). Having been fully briefed and argued[1], the matter is ripe for disposition.

**Background**

This case involves a slip-and-fall accident suffered by Plaintiff Michael A. Smith, Jr. at a Barnes & Noble store in Enfield, Connecticut on October 26, 2006. Plaintiff is a resident of Wilkes-Barre Pennsylvania. (Defendant's Statement of Material Facts (Doc. 29) (hereinafter "Defendant's Statement") at ¶ 5). At the time of his accident, plaintiff was employed by Kus Tire, a company located in Wilkes-Barre.

---

[1] The court notes that both plaintiff and defense counsel did an excellent job arguing their case.

(Id. at ¶ 6). He was in his second week on the job. (Id. at ¶ 7). Plaintiff's job required him to travel to several northeastern states to retrieve tires for his employer. (Id. at ¶ 8).

Plaintiff's injury occurred while he was on one of these trips. (Id. at ¶ 9). Plaintiff left Wilkes-Barre on the morning of September 26, 2006, heading to Connecticut to find new clients for the Kus Tire business. (Id.). Plaintiff was unable to secure a full load of used tires that day and decided to stay overnight to seek new customers the next day. (Id. at ¶ 10). At approximately 8:30 p.m., plaintiff walked into the Enfield, Connecticut Barnes & Noble bookstore. (Id. at ¶ 11). He intended to purchase some tea and use the restroom. (Id.). Upon entering the store, plaintiff purchased a cup of tea and headed for the bathroom. (Id. at ¶¶ 13-14).

Plaintiff slipped and fell on the floor of the restroom. (Id. at ¶ 15). He spilled his tea on the floor. (Id. at ¶ 16). Plaintiff does not recall seeing any water on the floor before he fell, and he was not able to identify the specific cause of his accident. (Id. at ¶¶ 17-18). One witness, Joseph LaCasse, saw plaintiff shortly after he fell. (Id. at ¶ 19). LaCasse had entered the store on the evening of September 26, 2006. (Id. at ¶ 21). After spending perhaps twenty minutes browsing books, LaCasse made his way to the restroom. (Id. at ¶ 23). He discovered plaintiff lying on his back on the floor in front of the men's restroom. (Id. at ¶ 24). Plaintiff told LaCasse that he had already telephoned for assistance from an ambulance. (Id. at ¶ 25). When LaCasse went into the bathroom, he saw a puddle of tea and another puddle of a

2

clear liquid on the floor. (Id. at ¶ 26). LaCasse was unaware how long the puddle had been on the floor. (Id. at ¶ 27).

The parties agree that plaintiff has no evidence that defendant itself created the hazardous condition in the bathroom on September 26, 2006. (Id. ¶ 29; Plaintiff's Counterstatement of Material Facts (Doc. 31) (hereinafter "Plaintiff's Statement") at ¶ 29). The parties also agree that defendant did not have actual notice of a hazardous condition in the bathroom. (Defendant's Statement at ¶ 30; Plaintiff's Statement at ¶ 30). The parties disagree about whether plaintiff has produced any evidence showing the length of time the water remained on the floor in the restroom, and whether there is evidence that defendant had constructive notice of the dangerous conditions. (Defendant's Statement at ¶¶ 31-32; Plaintiff's Statement at ¶¶ 31-32).

Plaintiff filed a complaint in the Court of Common Pleas of Luzerne County, Pennsylvania on September 24, 2008. (See Exh. A to Defendant's Notice of Removal (Doc. 1)). On October 30, 2008, defendant removed the case to this court. (Doc. 1). The complaint raises one count, for negligence. The parties engaged in discovery. At the close of discovery, defendant filed the instant motion. The parties then briefed and argued the issues, bringing the case to its present posture.

**Jurisdiction**

This Court has jurisdiction pursuant to the diversity jurisdiction statute, 28 U.S.C. § 1332. Plaintiff is a citizen of Pennsylvania. Defendant is a Delaware

Corporation with its principal place of business in New York. The amount in controversy exceeds $75,000. Because the court is sitting in diversity, the substantive law of Pennsylvania shall apply to the case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit

4

under the governing law.  Id.  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).

**Discussion**

Defendant seeks summary judgment on the plaintiff's claim of negligence. Under Pennsylvania law, "[a] *prima facie* negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred actual loss or damage." Krentz v. Consol Rail Corp., 910 A.2d 20, 27 (Pa. 2006).  This case involves alleged negligence after a slip-and-fall at a business.  Plaintiff was a business invitee at the bookstore on September 26, 2006.  See Estate of Swift v. Northeastern Hospital, 680 A.2d 719, 723 (Pa. Super. Ct. 1997) ("a business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.").  "The landowner's duty of protection toward business visitors is the highest duty owed to any entrant upon land, and the landowner is under an affirmative duty to protect the business visitor not only against dangers which he knows, but also against those which with reasonable care he might discover.  The business visitor enters landowner's premises with implied assurance of preparation

and reasonable care for his protection and safety while he is there." Treadway v. Ebert Motor Company, 436 A.2d 994, 998 (Pa. Super. Ct. 1981) (quoting Crotty v. Reading Industries, Inc., 345 A.2d 259, 262-64 (Pa. Super. Ct. 1975)). Thus, to prevail under these circumstances, a plaintiff "must prove either that the proprietor had a hand in creating the harmful condition, or that he had actual or constructive notice of such condition." Moultrey v. Great A & P Tea Co., 422 A.2d 593, 598 (Pa. Super. Ct. 1980).

The defendant does not deny that it had a duty to keep the premises safe for the defendant or that plaintiff was injured because of his fall, but instead focuses the inquiry on whether it breached that duty. As there is no evidence that defendant had actual notice of the dangerous conditions in the men's restroom, the parties agree that the question in this case is whether evidence exists by which a jury could conclude that defendant had constructive notice of the conditions in the bathroom. Courts have found that "'[w]hat will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case." Loeb v. Allegheny County, 339 n.1 (Pa. 1959) (quoting Lanni v. Pennsylvania Rail Road, 88 A.2d 887, 889 (Pa. 1952)). Factors to be considered are "the time elapsing between the origin of the defect and the accident"; the size and condition of the premises; the kind of business conducted there; the number of persons using the premises and how often they do so; the kind of defect; the cause of the defect; "and the opportunity which the defendant, as a

6

reasonably prudent person, had to [discover and] remedy it." Id.

There is evidence in this case which indicates a puddle of water was on the floor in the Barnes & Noble restaurant when plaintiff entered it, and that he slipped and fell on this wet area. Plaintiff testified that he fell when his left heel slid on water on the restroom floor. (Plaintiff's Deposition, Exh. A to Plaintiff's Brief in Opposition (Doc. 30) (hereinafter "Plaintiff's Dep."). at 43). He did not see any water on the floor before he fell, but his body became wet as he lay on the floor attempting to pull himself up. (Id. at 46, 48). He also saw water on the floor as he lay on the ground after his fall. (Id. at 49). At his deposition, Joseph LaCasse testified that he went into the bathroom after discovering the plaintiff lying on the floor outside the bathroom and discovered a puddle of water on the floor in front of the bathroom sinks. (Deposition of Joseph LaCasse, Ehx. C to Brief in Opposition (hereinafter "LaCasse Dep.") at 20-1). Based on this evidence, a jury could conclude that a dangerous condition existed on the floor of the Barnes & Noble bathroom, and that plaintiff slipped and fell in this area, injuring himself. The question here, then, is whether other evidence exists by which a jury could conclude that defendant had constructive notice of this spill.

Jennifer Wahoske, assistant manager at the Enfield store at the time of plaintiff's injury, testified during the discovery portion of the case. (See Jennifer Wahoske Deposition, Exh. E to Plaintiff's Brief in Opposition (hereinafter "Wahoske Dep.")). Wahoske testified that many of the cleaning duties at the Enfield store were

7

handled by National Janitorial Services ("NJS"), a "contractor for all janitorial services." (Id. at 14). NJS would arrive "first thing in the morning and do their thing." (Id.). Once the contractor left, Barnes & Noble workers would maintain the store for the rest of the day. (Id.). NJS workers did not come to the store every day, and Barnes & Noble employees were charged with cleaning on the days when NJS did not do so. (Id. at 15). Barnes & Noble employees also had responsibility for keeping the store clean after NJS workers left in the morning. (Id.). Of particular importance for these Barnes & Noble workers was keeping the bathrooms clean. (Id. at 15-16). Wahoske testified that managers would use a "Daily Assignment Sheet" to insure that an employee was assigned the bathrooms as "their primary responsibility" and the Manager of the Day was required to "followup" on that assignment. (Id. at 16). Managers were also supposed to "walk-through" the entire store hourly as an inspection. (Id. at 16-17). Wahoske admitted that the pressing needs of the business, however, sometimes prevented this hourly inspection from occurring. (Id. at 18). She also testified that Barnes & Noble had no "hourly sign in sheet in the bathrooms" to record whether the scheduled inspection occurred. (Id. at 20). Any record of specific assignments on September 26, 2006 was not preserved. (Id. at 22-23).

Paula Cortis testified that she was serving as the "closing manager" on September 26, 2006. (Deposition of Paula Cortis, Exh. G to Plaintiff's Brief (Doc. 30) (hereinafter "Cortis Dep.") at 17). Courtis reported that as part of her duties as

8

manager she was required to have the bathrooms checked "between every half an hour to every hour." (Id. at 18). As a woman, Cortis could not inspect the men's restroom, and would instead send a male worker to perform the task. (Id. at 19). The only man Cortis could recall working on September 26 was Steve Wichlac. (Id. at 19). She remembered sending him to inspect the bathroom, but could not recall when she did so. (Id. at 20). She did not send him in every hour, but remembered telling him to do at least one inspection. (Id.).

Steven Wichlac, who was working at the store as head cashier on the day of plaintiff's fall, testified at deposition. His shift on that day lasted from 12 p.m. until 8:00 or 8:30 p.m. (Deposition of Stephen Wichlac, Exh. D to Plaintiff's Brief (Doc. 30) (herinafter "Wichlac Dep.") at 12). Wichlac testified that part of his duties during his shift normally was inspecting the bathroom for safety, but that he had worked in the front of the store on September 26, and had not been assigned that duty. (Id. at 23, 25). He could not recall if the bathroom had ever been inspected during his shift. (Id. at 30).

Plaintiff does not present any evidence indicating how long the water that caused him to fall had been on the floor in the bathroom. Instead, the evidence of record indicates that defendant did not inspect the bathroom regularly to insure that conditions there were safe, despite the possibility that a dangerous situation could arise. Defendant argues that there is no evidence of when the spill occurred, and thus no evidence of the duration of time between the spill and plaintiff's fall.

9

Because of this lack of evidence, the defendant insists that constructive notice of the spill cannot be inferred.

"It is a fundamental principle of all negligence actions for personal injuries that the burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of plaintiff's injury." Rogers v. Horn & Hardart Baking Co., 127 A.2d 762, 763-764 (Pa. Super. Ct. 1956). Further, "[t]he mere happening of an accident is not evidence of negligence. Although there are a few exceptions, injury to an invitee of a storekeeper or restauranteer is not one." Id. at 764. In Rogers, the plaintiff had slipped and fallen on what appeared to be a greasy spot on the floor of a restaurant. Id. at 763. Only the plaintiff testified, and he offered no evidence as to how long the grease had been on the floor, or how it came to be there. Id. The court concluded that summary judgment was appropriate because "there is no testimony as to how or when this slippery substance came to be on the floor." Id. at 764. Thus "[t]here was no evidence from which a jury could find that the defendant had actual or constructive notice of the existence of a hazardous condition which he was negligent in not correcting." Id. Here, plaintiff likewise has no direct evidence of how or when the water ended up on the floor in the bathroom.[2]

---

[2] The mere presence of water on the floor cannot create negligence. Pennsylvania courts have concluded that "*res ipsa loquitor* does not apply to prove the negligence of shopkeepers in slip and fall and debris cases and cases in which properly stacked items fall on patrons, because shopkeepers cannot be charged with notice of transitory dangers that can materialize a split second before an injury occurs." Neve v. Insalaco's, 771 A.2d 786, 789 (Pa. Super. Ct. 2001).

10

Still, "[w]hat will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case and is not solely determinable by the lapse of time between the origin of unsafe condition and the accident." Katz v. John Wanamaker Philadelphia, Inc., 112 A.2d 65, 67 (Pa. 1955). Plaintiff could still meet his burden if he could offer circumstantial evidence to demonstrate that the water had been on the floor a sufficient amount of time to create constructive notice for the defendant. See Rumsey v. Great Alt. & Pac. Tea Co., 408 F.2d 89, 90 (3d Cir. 1969) (plaintiff offered sufficient evidence of constructive notice when she slipped and fell on lettuce on the floor of a restaurant when a witness testified that "there were about five small fragments of lettuce on the floor in the area in which she fell . . . the fragments were, brown, wilted, old and one or two inches in length . . . [and] there was no evidence of any very recent sweeping or inspection of the floor."); David v. Pueblo Supermarket of St. Thomas, 740 F.2d 230, (3d Cir. 1984) ("Circumstantial evidence that food was left on the floor for an inordinate period of time can be enough to constitute negligence."); Dougherty v. Philadelphia National Bank, 184 A.2d 238, 239-40 (Pa. 1962) (defendant had constructive notice of dangerous conditions brought about by customers tracking in water when defendant had placed a rubber mat in the area and assigned an employee to mop the area where plaintiff fell; "the mats were wet . . . the floor was being mopped continually . . [the floor was wet and muddy] . . . and it was necessary to mop all day long.").

11

Plaintiff does not present any evidence, circumstantial or otherwise, of how long the water was on the floor when plaintiff slipped. Instead, plaintiff has evidence that defendant did not check the bathroom for several hours before the fall occurred and evidence of how employees and other business invitees responded to news that plaintiff had fallen. There is no circumstantial evidence–such as a long trail of wet tracks leading away from the water on the floor or wet, muddy tracks throughout the bathroom, or reports of frequently malfunctioning pipes in the store–which would indicate that the condition had existed for a long time before plaintiff's fall. The only evidence that exists is that plaintiff slipped and fell on a wet area, and that plaintiff had not cleaned this area for most of the day, despite a policy of doing so.[3] There is no evidence, however, that the area where plaintiff slipped had been wet for an unreasonably long amount of time. A reasonable juror could not find circumstantial evidence of constructive notice in those conditions. As such, plaintiff cannot establish a breach of duty and summary judgment is appropriate on this claim. To conclude otherwise would be to invite a jury to find for the plaintiff based solely on evidence that he fell, which would undermine the notice requirement in the law. The court will grant the defendant's motion.

**Conclusion**

For the reasons stated above, the court will grant the defendant's motion for

---

[3]There is evidence that defendant's employees attempted to clean up the wet area after plaintiff's fall, but this is not evidence that defendant's workers had constructive notice of the area's condition before the accident.

summary judgment. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL A. SMITH,** | : | No. 3:08cv1974 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| **v.** | : | |
| | : | |
| **BARNES & NOBLE BOOKSELLERS;** | : | |
| **BARNES & NOBLE BOOKSELLERS, INC.; and** | : | |
| **BARNES & NOBLE, INC.,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**AND NOW**, to wit, this 27th day of May 2010, the defendant's motion for summary judgment (Doc. 26) is hereby **GRANTED**. The Clerk of Court is directed to **CLOSE** the case.

                              **BY THE COURT:**

                              **s/ James M. Munley**
                              **JUDGE JAMES M. MUNLEY**
                              **UNITED STATES DISTRICT COURT**